1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 LAWRENCE G. BENNETT,

8                    Plaintiff,

9        vs.

10 CAROLYN W. COLVIN,

11 Acting Commissioner of Social Security,

12                    Defendant.

|  |
|---|
| No. 1:15-CV-03065-MKD |
| ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ECF Nos. 14, 19 |

13        BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 14, 19. The parties consented to proceed before a magistrate

15 judge. ECF No. 24. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 grants Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No.

18 19).

19

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

1  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

2  nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

3  party appealing the ALJ's decision generally bears the burden of establishing that

4  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

5  <strong>FIVE-STEP EVALUATION PROCESS</strong>

6          A claimant must satisfy two conditions to be considered "disabled" within

7  the meaning of the Social Security Act.  First, the claimant must be "unable to

8  engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of not less than twelve

11  months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

12  "of such severity that he is not only unable to do his previous work[,] but cannot,

13  considering his age, education, and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy."  42 U.S.C. §

15  423(d)(2)(A).

16          The Commissioner has established a five-step sequential analysis to

17  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

18  404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

19  work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

20

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

   If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

   At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

   If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for Title II disability insurance benefits on August 7, 2007, alleging onset beginning March 1, 1997.[1]  Tr. 11.  The application was denied initially, Tr. 41-47, and upon reconsideration, Tr. 70-74.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on August 19, 2009.  Tr. 23-34. On October 28, 2009, the ALJ denied Plaintiff's claim.  Tr. 8-20.  On appeal, the district court remanded the case to the Social Security Administration and instructed it to provide Plaintiff with the opportunity for a hearing and to present new evidence.  Tr. 634.

On June 13, 2014, Plaintiff appeared before an ALJ for a second hearing. Tr. 522-579.  On March 2, 2015, the ALJ denied Plaintiff's claim.  Tr. 634-646. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of March 1, 1997, through his

---

[1] Plaintiff's claim for disability insurance benefits was initially filed concurrently with an application for Title XVI supplement security income benefits.  The Title XVI claim was approved for disability beginning August 2007.  Tr. 11.

date last insured of June 30, 2002.  Tr. 636.  At step two, the ALJ found Plaintiff

has the following severe impairments: "cognitive disorder, adjustment disorder,

and somatoform disorder (pain disorder)."  Tr. 636.  At step three, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled a listed impairment.  Tr. 639-640.  The ALJ then concluded

that the Plaintiff, through the date last insured, had the RFC to perform a full range

of work at all exertional levels but with the following non-exertional limitations:

he is unable to perform at production rate (e.g., assembly line work) pace but can

perform goal-oriented work (office cleaner) with customary breaks and lunch; and

he is able to do simple, routine tasks.  Tr. 640.  At step four, the ALJ found

Plaintiff could not perform any past relevant work.  Tr. 645.  At step five, the ALJ

found that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs in significant numbers in the national economy that Plaintiff could have

performed, such as janitor, laundry laborer, and delivery driver.  Tr. 645-646.  On

that basis, the ALJ concluded that, during the relevant period, Plaintiff was not

disabled as defined in the Social Security Act.  Tr. 646.

The Appeals Council did not assume jurisdiction of the case, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1484.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under the Social Security Act.  ECF No. 14. Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly evaluated Plaintiff's credibility;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ properly found Plaintiff had no severe physical impairments; and

4.  Whether the ALJ properly found Plaintiff did not meet or equal a listed impairment.

ECF No. 14 at 16.

**DISCUSSION**

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 14 at 33-37.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

1 "The claimant is not required to show that [his] impairment could reasonably be

2 expected to cause the severity of the symptom []he has alleged; []he need only

3 show that it could reasonably have caused some degree of the symptom." *Vasquez*

4 *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

5      Second, "[i]f the claimant meets the first test and there is no evidence of

6 malingering, the ALJ can only reject the claimant's testimony about the severity of

7 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8 rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

9 citations and quotations omitted). "General findings are insufficient; rather, the

10 ALJ must identify what testimony is not credible and what evidence undermines

11 the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

12 Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

13 ("[T]he ALJ must make a credibility determination with findings sufficiently

14 specific to permit the court to conclude that the ALJ did not arbitrarily discredit

15 claimant's testimony."). "The clear and convincing [evidence] standard is the most

16 demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

17 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

18 924 (9th Cir. 2002)).

19      In making an adverse credibility determination, the ALJ may consider, *inter*

20 *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ did not articulate specific, clear, and convincing reasons supported by substantial evidence in making the adverse credibility decision.

### 1.   *Unemployment Benefits*

The ALJ discounted Plaintiff's symptom claims because Plaintiff collected unemployment benefits, thus, he certified to the unemployment office that he was ready and able to work. Tr. 642. The ALJ found these statements contradict Plaintiff's testimony about the debilitating limitations he suffered.

Plaintiff challenges this basis on several grounds. First, Plaintiff contends that the ALJ's finding is inconsistent with SSA's policy. *See* ODAR Memo 10-1258 ("it is SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits."). Second, Plaintiff contends there is no inconsistency between his attestations to receive unemployment benefits and his application for disability. While receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, *see Carmickle v. Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir.

2008), here, the record here does not establish whether Plaintiff held himself out as available for full-time or part-time work.  Only the former is inconsistent with his disability allegation.  *Id*.

Finally, Plaintiff asserts that he sought disability benefits for a period commencing after his unemployment benefits ended.  ECF No. 14 at 36.  Plaintiff alleged a disability onset date of March 1, 1997.  Tr. 634.  The ALJ found that Plaintiff received unemployment benefits "until around 1997."  Tr. 641.  This record does not establish that Plaintiff received unemployment benefits during the period of alleged disability, and thus, demonstrates no inconsistency between Plaintiff's application for unemployment benefits and his disability application.  This basis for the ALJ's adverse credibility finding is not supported by substantial evidence.

### 2.    *Inconsistent Daily Activities*

The ALJ found that Plaintiff engaged in daily activities that were inconsistent with the debilitating symptoms he alleged.  Tr. 642.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to

spend a substantial part of his day engaged in pursuits involving the performance

of physical functions that are transferable to a work setting.").  "While a claimant

need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

discredit a claimant's testimony when the claimant reports participation in

everyday activities indicating capacities that are transferable to a work setting" or

when activities "contradict claims of a totally debilitating impairment."  *Molina*,

674 F.3d at 1112-13 (internal quotation marks and citations omitted).

There is no documentation of Plaintiff's daily tasks between 1997 and 2002.

The ALJ relied on a functional report from 2007, which described several activities

Plaintiff was then able to perform.  Tr. 141-148.  Presuming Plaintiff's condition

worsened in the intervening years, the ALJ concluded Plaintiff was as, or more

able, to perform those tasks between 1997 and 2002.  Tr. 642.  In 2007, Plaintiff

reported going to the library often, completing his own personal care, preparing

meals daily, driving a car, going to stores, managing his finances, and using a

computer.  Tr. 141-148.  In his testimony, Plaintiff also reported managing his

inheritance and applying for or arranging public assistance.  Tr. 642.  These

activities, the ALJ found, contradicted Plaintiff's symptom claims.  Tr. 642.

According to the ALJ, the activities show Plaintiff's anxiety and depression did not

prevent him from venturing out in public, interacting with others, adapting to new

environments, and completing necessary tasks.  Tr. 642 (citing Tr. 141-148).

Overall, the ALJ did "not view the claimant's allegations about his problems in recent years to be at the same level as the period between 1997 and 2002." Tr. 642.

Here, the ALJ's finding is inconsistent with the Commissioner's prior finding that Plaintiff was disabled as of August 2007. The daily activities the ALJ relied as inconsistent with Plaintiff's symptom claims came from a functional report dated October 2007. Tr. 141-148. But the Commissioner found Plaintiff disabled for purposes of supplemental security income as of August 2007. Tr. 50. Plaintiff's daily activities cannot be both consistent with disability under Title XVI and inconsistent with disability under Title II. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) ("Title XVI of the Act, which governs Supplemental Security Income for disabled indigent persons, employs the same definition of "disability" used in Title II . . . .").

The ALJ also relied on the fact that Plaintiff worked at his father's radio station and helped with its eventual sale. Tr. 642. As Plaintiff notes, the ALJ failed to address the fact that this was substantially accommodated work.

Last, Plaintiff faults the ALJ for relying on his applications for public assistance to discredit him. ECF No. 14 at 36. If a claimant's ability to apply for public assistance is sufficient to find his disabling symptoms not credible, Plaintiff questions who would remain credible. This Court agrees and finds it a

questionable practice to discredit a claimant for having the capabilities of seeking public assistance.

Given this record, this basis for the ALJ's credibility finding is not supported by substantial evidence.

### 3. Lack of Objective Evidence

The ALJ also discredited Plaintiff because objective medical evidence did not support his symptom claims. Tr. 641-642. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[2] But a claimant's testimony may not be rejected solely because it is unsupported by objective medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Because this Court rejected the ALJ's other reasons for discrediting Plaintiff's symptom claims, the only remaining reason the ALJ relied on was the lack of objective medical evidence. Alone, it is not a clear and

---

[2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

convincing reason for discrediting Plaintiff.  *Burch*, 400 F.3d at 680.  Accordingly, the Court finds the ALJ failed to offer clear and convincing reasons supported by substantial evidence to discredit Plaintiff.

### B. Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the medical opinions of reviewing neurologist, William L. DeBolt, M.D.; reviewing psychologist Kenneth Asher, Ph.D.; and examining physicians Jane Thompson, Ph.D.; Martin Dubek, M.D.; Vlastimil Calayan, M.D.; and Theodore Bushnell, M.D.  ECF No. 14 at 16-31.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

1.    *William Debolt, M.D.*

On remand, the ALJ was ordered to obtain medical expert testimony to infer an onset date of Plaintiff's disability. Tr. 805. The ALJ called a board certified neurologist, Dr. DeBolt, who reviewed the medical records and diagnosed Plaintiff with encephalomalacia and degenerative disc disease. Tr. 560-561. As a result of these diagnoses, Dr. Debolt found Plaintiff suffered the following impairments: thalamic pain syndrome, somnolence, endocrine dysfunction, visual-field deficit, gait disturbance, and vaso-motor instability. Tr. 561-562. Dr. DeBolt opined that Plaintiff's thalamic pain syndrome equaled Listing 11.04 since his stroke in 1991.

Tr. 566-567.  According to Dr. DeBolt, Plaintiff's thalamic pain syndrome would limit him to lifting no more than 10 pounds occasionally, sitting for no more than three to four hours a day and walking for one hour a day.  Tr. 567-568.  Plaintiff would be unable to climb ladders, scaffolds, or work above ground level.  Tr. 568. Additionally, Plaintiff would miss more than two days of work per month.  Tr. 574. The ALJ accorded Dr. DeBolt's testimony "little weight."  Tr. 639.

First, the ALJ found Dr. DeBolt's opinion inconsistent with the opinion of Dr. Opara, who examined Plaintiff in 2008 and was unable to identify any limitations.  Tr. 276-279, 639.  The ALJ gave Dr. Opara's opinion more weight because Dr. DeBolt examined Plaintiff and evaluated Plaintiff "closer in time to 2002."  Tr. 639.[3]

As an initial matter, the Commissioner found Plaintiff disabled for supplemental security income as of August 2007.  The definition of "disability" is the same for supplemental security income as it is for disability insurance benefits.

---

[3] The Court notes that the ALJ credited Dr. Opara's evaluation of Plaintiff in 2008, which occurred more than six years after the date last insured.  However, the ALJ subsequently rejected other medical opinions because "these evaluations occurred long after the claimant's date last insured," Tr. 644, despite the fact one was given only four years after the date last insured.

*Barnhart*, 540 U.S. at 24.  The ALJ failed to explain his reliance on Dr. Opara's

assessment at a time (in 2008) when the Commissioner had already found Plaintiff

disabled.  Moreover, the weight the ALJ accorded these two opinions did not take

into account that, unlike Dr. Opara, Dr. DeBolt specializes in the field relevant to

Plaintiff's impairments: neurology.  Tr. 558.  "[T]he opinions of a specialist about

medical issues related to his or her area of specialization are given more weight

than the opinions of a nonspecialist."  *Smolen*, 80 F.3d at 1285 (citing 20 C.F.R. §

404.1527(d)(5)).  Given Dr. DeBolt's explanation of the inadequacy of Dr. Opara's

evaluation, which did not include a neurological evaluation, Tr. 270-279, 571, the

ALJ should have articulated findings related to this issue.  Here, the ALJ failed to

explain why he rejected a specialist's opinion in favor of a non-specialist (Dr.

Opara), whose opinion the Commissioner may have rejected in awarding Plaintiff

supplemental security income.  Absent an explanation for this inconsistency, the

Court finds the ALJ's reasoning is not supported by substantial evidence.

Second, the ALJ accorded Dr. Debolt's opinion little weight because it

"appeared" Dr. Debolt based his opinions "in part on records after 2002, such as

gout."  Tr. 639.  There is nothing in the record that supports the ALJ's finding that

Dr. DeBolt relied on Plaintiff's gout after 2002 in assessing the impairments and

limitations.  Moreover, the record reflects that Dr. DeBolt reviewed and based his

opinions in part on the 1998 and 2001 CT scans.  Tr. 562, 574.  This was not a

1  specific and legitimate reason, supported by substantial evidence to reject the

2  opinions of Dr. DeBolt.

3      The Court finds that the ALJ erred in weighing Dr. DeBolt's medical

4  opinions.  Because Dr. DeBolt opined that Plaintiff's impairments met equaled a

5  listed impairment during the relevant period and that Plaintiff would miss more

6  than one day of work each month, this error was not harmless.  Tr. 567, 574.

7      *2.    Kenneth Asher, Ph.D.*

8      Kenneth Asher, Ph.D., reviewed Plaintiff's medical records and found

9  Plaintiff suffered from the following impairments: cognitive disorder, depressive

10  disorder, and pain disorder.  Tr. 531-534.  Based on these impairments, Dr. Asher

11  opined that Plaintiff suffered attention, concentration, and memory deficits.  Tr.

12  532.[4]  In assessing whether Plaintiff met the B criteria for Listings 12.02, 12.04,

13  _____

14  [4] Dr. Asher also opined that Plaintiff "isn't able to sustain anything – any kind of

15  activity for more than half a day."  Tr. 544.  The phrasing of the question and

16  answer is in the present tense, which suggests Dr. Asher's opinion pertains to

17  Plaintiff's abilities at that time, not retrospectively.  Accordingly, this limitation is

18  not addressed.  *See Howard ex rel. Wolff*, 341 F.3d at 1012 (explaining that ALJ

19  need only discuss significant probative evidence).

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 19

1  and 12.07, Dr. Asher could "only say with confidence that it[, Plaintiff's daily

2  living, social functioning, and concentration, persistence, and pace] were seriously

3  impaired in the mid-2000s," by which he later clarified he meant 2004.  Tr. 543.

4  Dr. Asher noted that reviewing physicians offered a different opinion about

5  Plaintiff's abilities.  Tr. 548.  But, Dr. Asher suspected, this was because those

6  physicians reviewed the record in 2008, before evaluations like Dr. Thompson's

7  had been produced.  Tr. 548.  Under questioning from Plaintiff's attorney, Dr.

8  Asher explained that Plaintiff "was having all sorts of problems, serious problems,

9  in the 1990s and early 2000s.  But I just don't feel that I'm able to estimate how –

10 quite how serious they were much before 2008."  Tr. 553.  Dr. Asher did agree,

11 however, that Plaintiff would miss four or more days of work per month in the late

12 1990s.  Tr. 554.  Plaintiff's counsel also asked whether Dr. Asher believed Plaintiff

13 equaled criteria C for 12.02 and 12.04.  Tr. 555.  Dr. Asher opined that Plaintiff

14 met Criteria C-1.2 beginning in the 1990s.  Tr. 556.  The ALJ gave Dr. Asher's

15 opinion "little weight."  Tr. 643.

16     First, the ALJ rejected Dr. Asher's opinion because he had to extrapolate

17 about the claimant's functionality prior to the date last insured.  Tr. 643.  Dr. Asher

18 relied on testing that occurred after 2002, the last date Plaintiff was insured.  Thus,

19 to reach his conclusion, Dr. Asher, like the other physicians in the record, inferred

20 limitations from the limited medical records available prior to 2002.  The Court

1  agrees that this alone is an insufficient reason to reject a medical opinion regarding

2  the onset date of previously determined disability, otherwise this reasoning would

3  apply to each of the medical opinions in the record.

4      Second, the ALJ rejected Dr. Asher's opinion finding that there was

5  insufficient medical evidence to support the limitations that he assessed for the

6  period of alleged disability.  An ALJ need not accept a physician's opinion which

7  is inadequately supported by clinical findings.  *See* 20 C.F.R. § 404.1527(c)(3);

8  *Thomas*, 278 F.3d at 957.  Prior to 2002, Plaintiff's medical record contains only

9  one notation documenting a mental complaint.  Tr. 644.  The ALJ found this lone

10  notation insufficient to support the limitations Dr. Asher assessed.  *Id.*

11      Plaintiff contends the ALJ should have credited Dr. Asher's opinion

12  because, unlike the state psychologists' opinions, Dr. Asher based his opinion on a

13  complete medical record.  While true, the additional medical records Dr. Asher

14  relied on post-date Plaintiff's period of disability by six or more years.  The

15  medical record is devoid of any contemporaneous assessment of Plaintiff's

16  limitations.  Without such an assessment, as even Dr. Asher admits, he could not

17  quantify the severity of limitations Plaintiff suffered from 1998-2002.  Tr. 553.  As

18  the ALJ explained, Plaintiff's cognitive difficulties could have worsened in the

19  intervening years, especially since Plaintiff did not receive treatment during that

20

1  time.  Tr. 644.  This was a specific, legitimate reason to discredit Dr. Asher's

2  medical opinion.

3        Third, the ALJ discredited Dr. Asher because, although some circumstantial

4  factors supported Dr. Asher's opinion, the ALJ found other circumstantial factors

5  that contradicted Plaintiff's claims (*e.g.*, Plaintiff drafted a full letter, documenting

6  his physical conditions).  Tr. 541, 644.  Plaintiff challenges the ALJ's

7  characterization of a letter he wrote as inconsistent with the limitations Dr. Asher

8  assessed.  The fact that he could draft a one-page letter, Plaintiff contends, is

9  consistent with Dr. Asher's assessment that he retains several strengths and, some

10  days, sustains activities for a half a day.  ECF No. 14 at 27.  According to Plaintiff,

11  the ALJ's conclusion evidences a practice that is prohibited: scouring the record to

12  justify a predetermined conclusion.  In support of his contention, Plaintiff notes

13  that the ALJ accepted that he, Plaintiff, was disabled since 2007, despite the fact

14  that he drafted a seven-page letter in 2008, Tr. 323-29, and a three-page letter in

15  2010, Tr. 874.  The Court finds that Plaintiff's ability to write a one-page letter

16  detailing his physical condition is not determinative of his cognitive abilities at that

17  time and contradicts the 2007 disability determination when Plaintiff drafted

18  similar letters.

19        The Court finds that the ALJ did not provide specific and legitimate reasons

20  for rejecting Dr. Asher's medical opinion.  Since Dr. Asher opined that Plaintiff's

1  impairment met or equaled a listed impairment and that Plaintiff would have

2  missed four or more days of work a month, this error was not harmless.

3        *3.    Martin Dubek, M.D.; Vlastimil Calayan, M.D.; Theodore Bushnell,*

4  *M.D.; and Jane Thompson, Ph.D.*

5        Martin Dubek, M.D., began treating Plaintiff beginning in July 2006.  Tr.

6  392.  In 2007, Dr. Dubek drafted a letter regarding Plaintiff's disability claim, in

7  which he wrote:

8        I am Mr. Bennett's treating Family Physician.

9        Mr. Bennett has been totally disabled by being unable to maintain
       normal employment or schedule requirement or be relied upon to be
10       able to perform any type of work at any given time since August,
       1990 traffic accident when he suffered traumatic brain and spinal
11       injuries with resulting continuing adverse physical consequences.

12  Tr. 180.

13        After Dr. Dubek left his local practice in October 2009, Vlastimil Calayan,

14  M.D., began treating Plaintiff.  Tr. 893.  In November 2012, Dr. Calayan opined

15  that Plaintiff's brain injuries left him completely unable to work since at least

16  August 1990.  Tr. 893-8955.  To support his opinion, Dr. Calayan referenced a CT

17  scan of Plaintiff's brain from August 2007.  Tr. 893-897.

18        Theodore Bushnell, M.D., also began treating Plaintiff in 2009.  Tr. 899.  Dr.

19  Bushnell opined that Plaintiff would miss four or more days of work a month if he

20

1  attempted to work.  Tr. 900.  Dr. Bushnell limited his opinion to the time he began

2  treating Plaintiff, which was July 2009.  Tr. 901.

3         In April 2010, Jane Thompson, Ph.D., performed a neuropsychological

4  evaluation of Plaintiff.  Tr. 874-889.  That evaluation consisted of a variety of

5  tests, including the Wechsler Adult Intelligence Scale-III, Wisconsin Card Sorting

6  Test, etc.  Tr. 880.  In addition, Dr. Thompson interviewed Plaintiff and reviewed

7  medical records post-2007.  Tr. 876-78.  Because records preceding 2007 were not

8  available, Dr. Thompson relied on the medical history Plaintiff described in a

9  three-page letter.  Tr. 878.  Based on the tests she administered, Dr. Thompson

10 concluded Plaintiff suffers from many cognitive deficits, which she found "are

11 consistent with the facts of his medical history."  Tr. 888.

12        The ALJ found these opinions inaccurate and unreliable sources of

13 information for Plaintiff's limitations during the relevant period of alleged

14 disability, from 1997 to 2002.  Tr. 644.  The ALJ collectively discounted the

15 opinions of these doctors, contending the opinions (1) were formed long after

16 Plaintiff's date last insured; (2) were formed by providers who did not treat

17 Plaintiff during the relevant period; (3) did not rely on objective medical evidence;

18 and (4) were inconsistent with Plaintiff's activities.  Tr. 644.

19        At the outset, Plaintiff faults the ALJ for grouping the physicians' opinions

20 and addressing them together.  An ALJ's reasoning is sufficiently specific when it

is "clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting SSR 96-2p).  As noted below, the Court concludes on this specific record, that the ALJ's collective rejection of the medical opinions failed to provide sufficiently specific findings for rejecting certain opinions.

First, the ALJ discounted the opinions of Drs. Dubek, Calayan, Bushnell, and Thompson because they treated Plaintiff and evaluated Plaintiff's abilities long after the last day he was insured.  Tr. 644.  The Court notes that the ALJ relied on and credited Dr. Opara's evaluation, which occurred in 2008, more than six years after the date last insured.  Dr. Opara's evaluation was completed at a later date (or near in time) compared to these providers' evaluations that the ALJ rejected.  *See* Tr. 390-392 (Dr. Dubek's treatment began in 2006, four years after DLI); Tr. 893 (Dr. Calayan's treatment began in 2009, seven years after DLI); Tr. 899 (Dr. Bushnell's treatment of Plaintiff began in 2009, seven years after DLI); Tr. 874 (Dr. Thompson evaluated Plaintiff in 2010, eight years after DLI).  Absent some explanation for this inconsistency, the Court finds this reason is not supported by substantial evidence.

Second, the ALJ rejected the opinions because the providers did not treat Plaintiff during the relevant period.  Tr. 644.  In the prior order remanding this

case, the Court criticized substantially similar reasoning for rejecting Dr. Dubek's medical opinions. Tr. 710.

Third, the ALJ noted that while some of the opinions include a line notation that Plaintiff's problems have existed since 1990, the ALJ found none explained why or referenced any objective medical bases from the relevant period to support their opinion. Tr. 644. The ALJ collectively referred to all four medical professionals' opinions in this reasoning. Typically, an ALJ need not accept a physician's opinion which is inadequately supported by clinical findings. *See* 20 C.F.R. § 404.1527(c)(3); *Thomas*, 278 F.3d at 957. Here, however, the ALJ did not articulate which medical professional's opinion he was referring to, nor any specific medical opinion that was insufficiently supported. Absent that articulation, this Court is unable to review the ALJ's reasoning.

Fourth, the ALJ found Plaintiff's activities during this time contradicted the physicians' opinions. Tr. 644. An ALJ may reject a contradicted treating physician's opinion if it is inconsistent with a claimant's daily activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir.1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). Contrary to the physicians' conclusion that Plaintiff was unable to work at all, including on a "part-time basis," Plaintiff reported that he

continued to work at his father's radio station and later helped sell it for a profit. *Compare* Tr. 392, 894, 888 *with* 32, 593.  The disparity between Plaintiff's abilities during the relevant time and the physicians' opinions years later, led the ALJ to find their opinions inaccurate and unreliable.

Plaintiff contests the ALJ's finding.  While Plaintiff admits he worked as a sales manager and general manager for his father, he also testified that had he worked for anyone other than his father, he would have been fired.  ECF No. 14 at 31 (citing Tr. 30-31).  But the fact that Plaintiff could work at all contradicts the physicians' opinions.  The physicians opined that Plaintiff was "completely unable to tolerate work on a regular or *part-time* basis."  Tr. 392, 894.  But, by Plaintiff's own admission, he did work on a part-time basis.  Tr. 32, 593.  The inconsistency constitutes a specific and legitimate reason for discounting their opinions.  *See Morgan*, 169 F.3d at 600-02.

Given the ALJ's cursory rejection of these medical opinions, the Court cannot conclude that the reasoning is supported by substantial evidence.  On remand, the ALJ should reassess the medical evidence.

*4. Dr. Mullins*

Plaintiff faults the ALJ for failing to address the opinion of a doctor quoted by Dr. Thompson.  ECF No. 14 at 30.  In her review of records, Dr. Thompson quotes Dr. Mullin as saying, "This is a severely disabled patient from brain injury.

I see no way, shape, or form would he be capable of work after this occurred . . . ." Tr. 877.  Plaintiff asks this Court to credit this opinion as true because the ALJ did not address it.  But the ALJ need not address opinions, like this one, that are "conclusory and inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228.

### C. Severe Impairments

Plaintiff faults the ALJ for finding Plaintiff has no severe physical impairments.  Plaintiff contends his thalamic pain syndrome and headaches were severe.  ECF No. 21 at 9.  On remand, the ALJ shall reassess Plaintiff's impairments consistent with the new evaluations of the medical evidence and Plaintiff's credibility.

### D. Medical Listings

Plaintiff contends the ALJ failed to address Dr. Asher's opinion that Plaintiff met criteria (C) of Listings 12.02 and 12.04 and Dr. DeBolt's opinion that Plaintiff equaled Listing 11.04 since 1991.  ECF No. 14 at 32 (citing Tr. 556, 566-567).  On remand, the ALJ shall reassess whether Plaintiff meets a listed impairment consistent with the new evaluations of medical evidence and Plaintiff's credibility.

### CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error.  On remand, the ALJ should reevaluate the medical opinion evidence, and

provide legally sufficient reasons for evaluating these opinions.  Additionally, the ALJ should ensure the credibility finding is supported by legally sufficient reasoning.  Finally, the ALJ must reconsider the step two and step three findings, and, if necessary, reevaluate the RFC and the entirety of the sequential process.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (ECF No. 14) is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings pursuant to sentence four.  42 U.S.C. § 405(g).

2.    Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**.

3.    An application for attorney's fee may be filed by separate motion.

The District Court Executive is directed to file this Order, enter Judgment for Plaintiff, remand the case for further proceedings, provide copies to counsel, and **CLOSE** the file.

DATED this Tuesday, August 30, 2016.

_s/ Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE